IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEPHANIE MCCULLOUGH,

    Plaintiff,                  CASE NO:

v.

THE SHOPPING CENTER GROUP, LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Stephanie McCullough, by and through her undersigned attorney, and files this Complaint and Demand for Jury Trial against Defendant The Shopping Center Group, LLC. ("TSCG"). In support thereof, Plaintiff states as follows:

### NATURE OF THE ACTION

1. This is an action against TSCG to recover damages stemming from its failure to pay commissions earned by Plaintiff during her employment.

2. This is an action against TSCG to recover damages stemming from its violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes section 501.204, et seq. ("FDUTPA").

3.    This is an action to recover damages stemming from Defendant's violations of Title VII of the Civil Rights Act. of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

**JURISDICTION AND VENUE**

4.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a).

5.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C § 1367.

6.    Plaintiff is a resident of Duval County, Florida.

7.    Defendant is a foreign limited liability company engaged in substantial and not isolated business activities in the State of Florida and Duval County.

8.    This Court has personal jurisdiction over Defendant.

9.    Venue is proper in the Middle District of Florida, Jacksonville Division, under 28 U.S.C. § 1391(b), as all events pertinent hereto occurred in Duval County, Florida.

**EXHAUSTION OF ADMINISTRATIVE PREREQUISITES**

10.    Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 11, 2025.

11. The EEOC issued a Notice of Rights on August 21, 2025, giving Plaintiff ninety (90) days to file suit under Title VII, which was to expire on November 19, 2025.

12. The instant action was timely filed.

## FACTUAL ALLEGATIONS

13. Plaintiff was hired by Defendant in 2008 as a licensed real estate agent.

14. While Plaintiff was designated an independent contractor by Defendant, the nature of her work was that of an employee as evinced by:

    a. Plaintiff's long term career working solely for Defendant in excess of 16 years, including as a shareholder;

    b. Defendant's provision of work tools including her company issued computers and files, which were mandated to be saved on Defendant's network;

    c. Defendant's ability to lock Plaintiff out of her email, cell phone applications, and company-issued laptop, cutting off her ability to access files necessary to service her business;

    d. Defendant's requirement that Plaintiff participate in training modules regularly assigned to its employees;

e.      Defendant's status as the "broker of record" for Plaintiff's clients, receiving payments and financial control by Defendant, determining when and how to enforce payment terms for deals Plaintiff completed;

f.      Defendant's control and funding for all branding and marketing materials, subscriptions, and resources, as well as paying reimbursement to Plaintiff for expenses she incurred in connection with the performance of her duties such as travel, lodging, and other ordinary business expenses;

g.      Plaintiff's fulfillment of the role of a commercial real estate agent, providing services central to the Defendant's primary business, a commercial real estate brokerage firm;

h.      Defendant's Exclusive Listing Agreements restricting clients from hiring agents directly; and

i.      Defendant restricting Plaintiff from hiring assistants independently during employment.

15.    In light of these economic realities, Plaintiff was improperly designated an independent contractor by Defendant and was, in fact, an employee of Defendant.

16.    While real estate agents can be independent contractors under the law, the Internal Revenue Code requires agents to receive substantially

4

all of their remunderation in a manner directly related to sales rather than number of hours worked and such services must be performed pursuant to a written contract providing for the agent not to be treated as an employee. See 26 U.S.C. § 3508

17.    Plaintiff did not have a written agreement with Defendant stating that she was not to be treated as an employee.

18.    Plaintiff was not solely compensated based on her sales output during her employment with Defendant.

19.    By misclassifying Plaintiff as an independent contractor, Defendant was able to reduce its payroll expenses by not paying the employer's share of federal employment taxes including social security and medicare taxes.

20.    By misclassifying Plaintiff as an independent contractor, Defendant was able to reduce its payroll expenses by not paying Plaintiff insurance and other employment benefits it provides to its regular employees.

21.    By reducing its payroll expenses through the misclassification of Plaintiff as an independent contractor, Defendant was able to obtain an unfair advantage over its competitiors at Plaintiff's expense.

22.    Defendant is a commercial real estate brokerage firm employing licensed real estate agents performing services for the company as staff and independent contractors.

23.    As part of her duties for Defendant, Plaintiff was to market owners and developers' properties for lease, identify locations for tenants, initiate interest and procure transactions, negotiate contracts, and identify and solicit new business.

24.    In executing her duties, Plaintiff was responsible for bringing parties together and effectuating the leases or sales as a result of her efforts and continued negotiations inaugurated by Plaintiff.

25.    Plaintiff and Defendant did not enter into a written agreement describing Plaintiff as an independent contractor or how Defendant would compensate Plaintiff for the deals she located, negotiated, and procured following the resignation or termination or her employment.

26.    During her employment, Defendant paid Plaintiff commissions pursuant to its standard commission structure of fifty percent (50%) of the gross commission received by Defendant.

27.    Throughout her employment, Plaintiff consistently performed as a top producer for the company and was paid her commission for the sales she procured.

6

28. Despite her proven record of performance and loyalty to the company, Defendant terminated Plaintiff on July 15, 2024 without any cause.

29. At the time of her termination, Plaintiff had procured numerous client relationships and transactions for Defendant that had not yet closed.

30. On September 18, 2024, Defendant informed Plaintiff that she would receive commissions on deals that she procured before her termination only if (i) "an LOI [was] received or sent on or before 7/15/2024" and (ii) that "deal closes (signed PSA or lease) within a period of 120 days from 7/15/2024."

31. Based on information and belief, Defendant did not place the same restriction on the payment of post-termination commissions on similarly situated male employees.

32. Defendant intentionally excluded Plaintiff from any futher communications or negotiations with the customers for whom she had negotiated pending deals.

33. Defendant has refused to pay out commissions for trasnsactions Plaintiff procured before her termination that closed more than 120 days after her termination.

34. Defendant's retention of Plaintiff's commissions for transactions she procured before her termination but closed after the 120 day period is unjust.

35. Plaintiff has suffered damages as a result of Defendant's actions.

### COUNT I: UNJUST ENRICHMENT

36. Plaintiff incorporates the allegations contained in paragraphs 1, 5-9, 13, 22-30, and 32-35 as if fully restated herein.

37. Plaintiff conferred a benefit on Defendant when she procured sales during her employment with Defendant that did not close before the 120-day post-termination period.

38. Defendant was aware of the benefit being conferred by Plaintiff and had knowledge thereof.

39. Defendant voluntarily accepted and retained the benefit conferred upon it by Plaintiff's procurement of such transactions.

40. The circumstances render Defendant's retention of the benefit inequitable unless it pays to Plaintiff commissions based on the value oftransactions she procured.

WHEREFORE, Plaintiff respectfully requests that this Court to enter an order finding that Defendant has been unjustly enriched, ordering Defendant to pay to Plaintiff damages caused by its actions, awarding

Plaintiff pre- and post-judgment interest, attorneys' fees and costs pursuant to Florida Statutes section 448.08, and any other relief this Court deems just and proper.

## COUNT II: VIOLATION OF FDUTPA

41. Plaintiff incorporates by reference the allegations contained in paragraphs 2, 5-9, and 13-21 as if fully restated herein.

42. Defendant improperly classified Plaintiff as an independent contractor, rather than an employee, to avoid paying certain remuneration to Plaintiff, to decrease its tax liability as Plaintiff's employer, and to deny Plaintiff certain benefits associated with employment not afforded to independent contractors.

43. Defendant's actions are an unfair and deceptive trade practice prohibited by FDUTPA.

44. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff has suffered damages, including lost benefits, wages, and other remuneration it and its client would have paid to Plaintiff had it properly compensated her as an employee of Defendant.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, interest, costs, and attorneys' fees as provided by

Florida Statutes section 501.211, et seq, and for any and all other relief this Court deems just and proper.

## COUNT III: DISCRIMINATION

45. Plaintiff incorporates the allegations made in paragraphs 3-4, 6-13, and 22-35 as if fully restated herein.

46. Plaintiff is female.

47. After her termination, Defendant informed Plaintiff that she would not receive her commissions if (i) "an LOI [was] received or sent on or before 7/15/2024" and (ii) that "deal closes (signed PSA or lease) within a period of 120 days from 7/15/2024."

48. Based on information and belief, such restrictions were not placed on the payment of post-termination commissions to male comparators employed by Defendant.

49. Defendant intentionally discriminated against Plaintiff because of her gender by restricting the payment of post-termination commissions.

50. Refusing to pay post-termination commissions to Plaintiff on the basis of her sex is unlawful discrimination barred by Title VII.

51. Said acts by Defendant, as set forth above, have caused and continue to cause Plaintiff damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding Plaintiff the value of her earned

commissions, pre and post judgment interest, damages for emotional distress, punitive damages, attorneys' fees and costs, and any other relief that this Court deems is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 19th day of November 2025.

**DELEGAL POINDEXTER
& UNDERKOFLER, P.A.**

*/s/ James C. Poindexter*
James C. Poindexter
FL Bar No. 116039
Email: james@delegal.net
T.A. "Tad" Delegal, III
FL Bar No. 0892701
Email: tad@delegal.net
Alexandra E. Underkofler
Fla. Bar No.: 1018209
Email: alex@delegal.net
424 East Monroe Street
Jacksonville, FL 32202
Phone (904) 633-5000
Facsimile (904) 358-2850
***Counsel for Plaintiff***

11